Per Curiam.
This is an appeal in the nature of a writ of error from the Circuit Court of the county of Warren. Blanton sued Coleson in trover for a negro named Hagar, a child of one of the negroes named in the deed of trust from Richard Blanton and Philip Vaughan to Charles Blanton, the plaintiff, dated the 19th of August, 1791, by which deed said negroes were conveyed “to said Charles, his executors and administrators, in trust to and for the following uses: that is to say, to the use of the said Philip, until * William (a son of Philip Vaughan by a daughter of Richard Blanton, which daughter was then dead) shall attain the age of 21 years or marry, or in case of his death before either happens, then until the next youngest child shall attain to that age or marry. And upon the happening of one of these events, then to the use of Burnet, Lucy, Polly, and William (the children of said Vaughan, and his said deceased wife”). The deed of trust was indorsed thus: “Carolina, April court, 1792. This deed was acknowledged by Richard Blanton, and ordered to be recorded: William Nelson. Truly recorded: John Pendleton. Carolina, April court, 1794. Proved by the oaths of the witnesses as to Vaughan, and ordered to be recorded : William Nelson.” On the 15th of December, 1815, John Pendleton certified that the foregoing deed of trust from said Richard Blanton and Philip Vaughan to Charles Blanton, was duly proved and acknowledged, and admitted to record in the court of said county, *125 and that the certificates of proof and acknowledgment, signed by William Nelson as clerk, are taken from the records in said office. Mr. Pendleton signed his name as clerk. There is also indorsed a certificate of the presiding justice as to the official characters of Nelson and Pendleton. William Tate was introduced for the plaintiff; his father had sold the negro in question to Coleson, the defendant; whether he warranted the ««title, he could not say ; nor whether there was a bill of sale; he said he had heard his father say, that he, the father, had sold Hagar 15 or 20 years ago; he understood his father got her from Logan. Evidence was introduced to identify the negro. It was admitted by the defendant that a demand was made of him of the negro in controversy a little before Christmas, 1813. Fry says that 15 or 20 years ago Philip Vaughan sold the negro in controversy to Logan, of Surry County, in North Carolina. William Vaughan’s deposition was offered and rejected, he being a cestui * que trust. His declaration made to Fry is not sufficient proof of the discharge of his interest. This brings us to the principal question in this cause. The first is, had Charles Blanton, the trustee, such a property in the negro in question as enabled him to bring and sustain this action ? The legal estate was in him, his executors and administrators. This gave him the absolute legal ownership of the slave, and that never ceases till the objects of. the trust be accomplished, one of which is a recovery for the benefit of cestui que trust from any one who has the possession. It does not appear when William Vaughan married or attained 21. This will be material to the solution of some of the questions made in this cause. Another question is, whether the deed to the trustee be void. It was dated the 19th of August, 1791, acknowledged by Richard Blanton, and recorded in due time. It was not proved and registered as to P. Vaughan until April, 1794, far beyond the ultimate period allowed by the law of Virginia. It was valid as between the. parties, whether recorded or not. As to subsequent purchasers, a prior voluntary conveyance may not be good. But until such subsequent purchaser appear, it is legal evidence, and as such, should be received and read to the jury. Another question is, whether any prior right was vested in Philip Vaughan by his marriage with Richard Blanton’s daughter, and putting the negroes in his possession, where they remained till after the birth of four children ? *126 There is no evidence of this but in the recital of the trust deed; and that recital negatives a prior right in Vaughan. Both Vaughan and Richard Blanton in this deed admit the right of Blanton. A subsequent purchaser cannot say after this, that Vaughan had an antecedent title which still continued to exist after the acknowledgment and estoppel. The legal title then was by the deed in Charles Blanton the trustee. Another question is, whether Logan, being a purchaser for Vaughan, is preferred * in law to Charles Blanton the trustee ; surely he cannot. Though a subsequent purchaser for value be preferred to a volunteer, it is because the prior conveyance is considered as a nullity and the property to be still remaining in the grantor. Will this apply to the case where one, not having the legal estate at all, as Vaughan had not, conveys to a purchaser for a valuable consideration? Will that exclude Charles Blanton, who derived his legal title, not from Vaughan, but Richard Blanton? Surely not. The question here is only between Blanton and Logan, who had the better right, Richard Blanton or Philip Vaughan. Another question is, whether the statute of limitations will apply to this case so as to bar the action of Charles Blanton, the trustee and plaintiff in this action ? By the act of 1715, ch. 27, § 5, the action may be barred if not brought within three years next after the cause of action accrued. When did the cause of action accrue to the plaintiff? Not until the arrival of William Vaughan to the age of 21 years, and not until a conversion after that period. The right of action accrues when, after the marriage or coming of age of William Vaughan, there was a possessor who used the property as his own, without the consent of the true owner. But we cannot ascertain what point of time that was. The deed to the plaintiff was made the 19th of August, 1791. The writ in this cause issued the 13th of October, 1813. Frie’s deposition was taken the 18th of December, 1794. Nineteen or twenty years before that, Vaughan sold the negro to Logan, that is to say, in the year 1793 or 1794. This sale vested the trust estate, which Vaughan had by the deed of trust, in Logan; and that, and the right of possession thus transferred, did not cease so as to let in the trustee’s claim till William Vaughan’s arrival to the age of 21. The court inclines to the opinion at present, that a lapse of three years, and a consequent bar in favor of one possession, is not also a bar in favor of another *127 who afterwards got the possession, * before the lapse of three years after the action accrued against him. The property remains in the plaintiff as before; the remedy by action is barred, but the right of recaption exists. If a defendant has been three years in possession, a right of property is not thereby acquired, as a right of possession in ejectment, where.the right of entry being destroyed, and no other remedy remaining, a bar to the entry leaves the .possession unassailable by any means. It is said that 4 Mass. 702; 5 Johnson, 412, are to the contrary. These books are not produced; the reasons given are not known; we must be governed by our own reason and the spirit of former cases. The second volume of Henning and Munford, 300, 301, we have seen. The point as there stated is admitted, but no reason or former authority is given. It is believed that the defendant may or may not plead the act of limitations in bar of a personal action, as he thinks proper. If he does not plead it, he cannot insist upon it. No one can plead for him; that would be to make him take advantage of the act, whether he would or not. A garnishee in attachment cannot plead the act of limitation for the defendant; no more can a third person into whose hands the personal chattel may come, after a prior possession had of it for three years. The defendant need not plead the act of limitations in bar of an ejectment, because the bar, which takes away the plaintiff’s right of entry, vests the right of possession in the defendant, and this right he may give in evidence on the general issue. But in the case of personal actions the statute must be pleaded, because no right of property vests' in the defendant on the accrual of the bar under the statute, And not pleading the statute in the case from second Henning and Munford, distinguished those who did not plead the statute from those who did. The latter did not recover as they would, if, by effluxion of time, they acquired the property. If then the right of property is not lost by the plaintiff, and is not acquired by the defendant, * and he can only plead in bar of the remedy, then a second possessor cannot plead the statute, because a former, under whom he claims, could. Nor can the second possessor bar the plaintiff’s remedy by the plea which that former possessor used at his option. Again, though the plaintiff be barred by the act of limitations in one State, he may recover in another, where the time is longer and is not yet elapsed. *128 The reason is, the plaintiff may use the remedy given by the law of the country where the remedy is sought.- ■ And as the time to bar by the act of another State respects the remedy, and not the right, it cannot be resorted to at all in the courts, of that State where the action happens to be brought, as it would certainly be if a lapse of time vested in the possessor the property, of the thing sued for. If the owner retake the property, peaceably .after three years, or come into possession as executor or administrator, or by other lawful means, his dominion and possession become united, and he is not-bound to part with either to the late possessor or his representative. It may be urged that the first possessor, when he conveys to a second, transfers the right to plead the statute as appendant to the article transferred. What then will the first possessor plead, if, after that, he be sued in trover ? Will he still plead the defense which he has alienated? Another question is as to the special matter to avoid the general operation of the statute in the plea of three years elapsed before the commencement of the action. Whether the exception be allowed by the statute expressly, of by construction upon the statute, the matter of the exception should be stated in a replication, and issue be taken upon it, not upon the plea of three years elapsed; for that is admitted by the special matter to avoid it, and need not be tried. If no issue be taken upon the special matter, how will the parties know whether or not to produce proof? How will the defendant know that the plaintiff intends to produce proof of any * special matter of exception ? How will he be prepared to rebut such proof when offered, if he have no previous notice by pleading? It is a question, whether a removal of the property to a distance, for the purpose of avoiding the plaintiff’s action, and concealing from the plaintiff who hath the possession, and where it is, so as to place it out of his power to sue, will excuse the plaintiff from commencing his action within the prescribed time. Such circumstances will form an exception upon the same principle that if a defendant die, and there be no executor or administrator to be sued, the intervening time will not be computed; or where the plaintiff dies, and there is no executor or administrator for some time. Here, also, the intervening time will not be computed. Impotentia excusat legem. The proof of removal must be made by the plaintiff in verification of ’his replication ; and he must prove *129 further, as well as state in his replication, that after using proper diligence and search to discover where the property was, he could not discover where it was. This proof also must come on the side of the plaintiff. The period of the termination of this exception must be fixed by proof on the side of the defendant, by showing that on such a day, which was more than three years before the commencement of the action, the plaintiff had knowledge where the property was, and in whose possession it was. The impossibility to sue being once established by proof, continues till terminated by proof ex contrario. As to the application of the act of limitations to trusts, the rule is that it does not apply in the case of trusts. This is a generalized expression ; reduced to particularity it means, that a justice [trustee ?] cannot plead the act against his cestui que trust, because his possession is the possession of the cestui que trust. The rule excludes the trustee from the benefit of the plea in this instance, but furnishes no defense to his adversary, a stranger, when the trustee is plaintiff. The result of all the inquiries is, that the plaintiff * once had a right to recover, and still has it, unless barred by the act of limitations. Whether he is barred or not, cannot be ascertained for want of some facts, which might have been found and stated on the record. The court cannot therefore determine whether the plaintiff be barred or not, until this statement be made. And then we come to another question ; which is, whether a repleader or amendment of the pleadings can now be directed. And surely, where the pleadings are not such as will bring out the proper facts, such repleader or amendment may be allowed of; otherwise, judgment could not be given upon the merits. Another question is, whether such repleader or amendment be allowable for introducing a defense supported -by the act of limitations. The old doctrine was to the contrary ; but in modern times this aversion to the act of limitations has worn off. The courts now think this act as much to be favored as any other. Why should not a defense, made legal by it and sufficient, be let in by the same means as any other? There is no just ground for any such difference. Therefore let the judgment be set aside and the cause remanded, with liberty to replead and put in issue such matters as the parties may think proper, to bring before the court the facts not yet ascertained.
Note. The dictum in this case, that three years’ adverse possession of person *130 alty does not vest the absolute title of property, and that the right of recaption / exists after such possession, is distinctly overruled by Kegler v. Miles, Mar. & Yer. 426; Partee v. Badget, 4 Yer. 174, and Hardeson v. Hays, 4 Yer. 507.
See, as to the operation of the statute of limitations upon trust estates, Pinkerton v. Walker, 3 Hay. 221; Goss v. Singleton, 2 Head, 67; Ferguson v. Kennedy, Peck, 321; Williams v. Otey, 8 Hum. 563; Woolridge v. Planters’ Bank, 1 Sneed, 297; Wilson v. Kilcannon, 4 Hay. 182; King v. Travis, 4 Hay. 280; Parker v. Hall, 2 Head, 641; Belote v. White, 2 Head, 703; Kincaid v. Rogers, 10 Hum. 83; Herron v. Marshall, 5 Hum. 443; Porter v. Greer, 1 Cold. 564; Smith v. Thompson, 2 Swan, 386; Aiken v. Smith, 1 Sneed, 304; McDonald v. McDonald, 8 Yer. 145; Porter v. Porter, 3 Hum. 586; Cartwright v. Cartwright, 4 Hay. 134; Hickman v. Gaither, 2 Yer. 200; Smart v. Waterhouse, 10 Yer. 94; Lafferty v. Furley, 3 Sneed, 157; Guthrie v. Owen, 10 Yer. 339; Cocke v. McGinnis, Mar. & Yer. 361; Bryant v. Puckett, 3 Hay. 252; McLain v. Terrell, 1 Swan, 48; Yarborough v. Newell, 10 Yer. 376; Overton v. Bigelow, 3 Yer. 513; Wood v. Jones, Meigs, 516; Hammond v. Hopkins, 3 Yer. 525. As to subsequent purchasers from vendor before registration, McCulloug v. Eudaly, 3 Yer. 346; Vinson v. Huddleston, Cooke, 254; Lillard v. Rucker, 9 Yer. 64; Vance v. Masterson, 3 Hum. 619; Myers v. Ross, 3 Head, 59; Copeland v. Bennett, 10 Yer. 355; Caines v. Jones, 5 Yer. 249. See King’s Digest, 563, 3175, 3183, 6976, 8483, 9175.